UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRUCE C. BAPTIST                                    CIVIL ACTION

VERSUS                                              NO. 17-12718

C.R. BARD, INC., ET AL.                             SECTION "B"(5)

ORDER AND REASONS

Defendants filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim. Rec. Doc. 7. Plaintiff timely filed an opposition. Rec. Doc. 18. For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss (Rec. Doc. 7) is **DENIED** with respect to Plaintiff's inadequate warning and redhibition claims and **GRANTED** with respect to all other claims. Plaintiff shall have twenty-one (21) days to amend his complaint to address the deficiencies identified in this Order and Reasons. If Plaintiff does not correct those deficiencies within twenty-one (21) days, the deficient claims will be **DISMISSED WITH PREJUDICE.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On November 11, 2015, Plaintiff Bruce Baptist underwent surgery to repair an inguinal hernia. *See* Rec. Doc. 15 ¶ 6. Plaintiff's surgeon inserted PerFix Mesh, a product allegedly manufactured by Defendants C. R. Bard, Inc. and Davol Inc., into Plaintiff's body during the first surgery. *See id.* ¶¶ 6, 8. On October 16, 2017, Plaintiff suffered "inflammation, pain and

1

recurrence requiring additional surgery[,]" allegedly because of the mesh used during his surgery. *See id.* ¶ 7. On November 17, 2017, Plaintiff brought suit under the Louisiana Products Liability Act (LPLA), in addition to other state law causes of action, for the injuries he allegedly suffered from Defendants' mesh. *See* Rec. Doc. 1. Plaintiff later amended his complaint to incorporate additional factual allegations, but did not add new claims or parties. *See* Rec. Doc. 15.

In his Amended Complaint, Plaintiff alleges that the mesh used in his surgery is made of polypropylene. *See id.* ¶¶ 9, 11. Defendants allegedly manufacture the mesh by assembling multiple sheets of mesh on top of each other into a single, multi-layer, piece of mesh. *See id.* The holes in the mesh are allegedly one millimeter across. *See id.* ¶ 30.

Plaintiff further alleges that the mesh used in his surgery suffered from various infirmities—some due to the design of the mesh and others due to Defendants' failure to properly manufacture the mesh. Plaintiff alleges that these infirmities were defects under the LPLA. First, Plaintiff claims that the mesh did not conform to Defendants' specifications because it was made of "substandard, adulterated, and non-medical grade polypropylene." *Id.* ¶ 24. Second, Plaintiff alleges that Defendants' mesh was more dangerous than necessary because the holes were too small and mesh included too many layers. *See id.* ¶¶ 30, 31. These characteristics

allegedly allowed bacteria to grown in the mesh after surgery and made the mesh more irritating to surrounding tissue. *See id.* Third, Plaintiff alleges that the "Instructions for Use" of the mesh did not adequately warn of risks posed by the mesh, particularly that the risk of adverse side effects was greater than with other types of mesh. *See id.* ¶¶ 37-41. Fourth, Plaintiff alleges that Defendants breached an express warranty that the mesh "was a safe and effective treatment for hernias, reasonably fit for intended purposes, and of merchantable quality." *Id.* ¶ 46. In addition to his claims under the LPLA, Plaintiff also brought claims for redhibition, negligence, and breach of implied warranties. *See id.* ¶¶ 50-68.

After Plaintiff filed his initial Complaint, but before Plaintiff filed his Amended Complaint, Defendants filed the instant motion to dismiss, arguing that Plaintiff's factual allegations are insufficient to state a claim for relief. *See* Rec. Doc. 15. Plaintiff timely filed an Opposition. *See* Rec. Doc. 18.

**LAW AND ANALYSIS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzalez*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether a plaintiff has met his burden, a court "accept[s]

3

all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (some internal citations and quotation marks omitted).

Plaintiff alleges four claims under the Louisiana Products Liability Act (LPLA) and four other state law claims.[1] To prevail under the LPLA, a plaintiff must show that (1) the defendant manufactured the product, (2) the plaintiff's damage was "proximately caused by a characteristic of the product," (3) the characteristic made the product "unreasonably dangerous," and (4) the plaintiff's damage resulted from a reasonably anticipated use of the product. *See* La. Rev. Stat. § 9:2800.54(A). A product can be unreasonably dangerous (1) "in construction or composition,"[2]

---

[1] Plaintiff argues that Defendants' motion to dismiss is moot because Plaintiff filed an amended complaint after Defendants filed their motion to dismiss. *See* Rec. Doc. 18 at 5-6. A defendant who has filed an initial motion to dismiss does not need to file another motion to dismiss when a plaintiff amends a complaint. *See* 6 Wright & Miller, Federal Practice and Procedure § 1476 (2005). "If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Id.* Here, the amended complaint does not raise new claims or involve new parties. *Compare* Rec. Doc. 1 *with* Rec. Doc. 15. Therefore, because of the substantial similarities between the pleadings, the Court will address the motion to dismiss to the amended complaint. *Cf. Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, No. 16-12910, 2016 WL 4429953, at *2 (E.D La. Aug. 22, 2016).
[2] *See* La. Rev. Stat. § 9:2800.55.

(2) "in design,"[3] (3) because there is an inadequate warning,[4] or (4) because it failed to "conform to an express warranty."[5] *See id.* § 9:2800.54(B). A plaintiff bears the burden of proving all elements of an LPLA claim. *Id.* Plaintiff has brought an LPLA claim under each theory of unreasonable dangerousness.

Plaintiff's Amended Complaint satisfies the two preliminary requirements of the LPLA, that the defendants be manufacturers and the plaintiff be injured by a reasonably anticipated use of the product. A manufacturer includes an "entity who is in the business of [producing, making, fabricating, constructing, [or] designing] a product for placement into trade or commerce." *Id.* § 9:2800.53(1). The definition also encompasses an "entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product." *Id.* § 9:2800.53(1)(a). Plaintiff alleges that the mesh used in his surgery was branded as a Bard product. *See* Rec. Doc. 15 ¶ 2(A). Plaintiff also alleges that "Defendants researched, designed, developed, tested, manufactured, labeled, [and] packaged" the mesh. *See id.* ¶ 8. Therefore, Plaintiff has stated facts that, if true, establish that Defendants are manufacturers under the LPLA.

Plaintiff has also adequately pled that he was injured by a reasonably anticipated use of Defendants' product. Plaintiff

---
[3] *See* La. Rev. Stat. § 9:2800.56.
[4] *See* La. Rev. Stat. § 9:2800.57.
[5] *See* La. Rev. Stat. § 9:2800.58.

5

alleges that he was injured when Defendants' mesh was used during Plaintiff's hernia surgery. *See id.* ¶ 6. Plaintiff also alleges that Defendants intended the mesh to be used in hernia repair surgery. *See id.* ¶ 8. Therefore, Plaintiff has alleged that any injuries he suffered from the mesh were the result of a reasonably anticipated use.

Plaintiff's first LPLA claim is for a "construction or composition" defect. *See* Rec. Doc. 15 ¶¶ 20-25 (citing La. Rev. Stat. § 9:2800.55). "A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Rev. Stat. § 9:2800.55. A plaintiff "must show not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it unreasonably dangerous." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 311 (5th Cir. 2013). A deviation is material when it "increases the propensity for injury . . . ." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 698 (5th Cir. 2012). A plaintiff must also show how the alleged deviation caused the plaintiff's injury. *See Rayford v. Karl Storz Endoscopy Am., Inc.*, No. 15-2835, 2016 WL 4398513, at *4-5 (W.D. La. June 22, 2016).

6

Plaintiff fails to state a claim for a "construction or composition" defect. Plaintiff alleges that Defendants' mesh used "substandard, adulterated, and non-medical grade polypropylene," which "did not conform to Defendants' specifications or performance standards." *See* Rec. Doc. 15 ¶ 24. Even assuming that this statement sets out Defendants' specifications or performance standards, which is a stretch given the lack of factual detail, Plaintiff's allegations do not show that the deviation was material or that the deviation was the cause of Plaintiff's injury. Plaintiff repeatedly states that *all* "[p]olypropylene is toxic when inserted into the human body." *Id.* ¶ 11; *see also id.* ¶¶ 12-13. Plaintiff does not offer any facts to suggest that the "substandard, adulterated, and non-medical grade polypropylene" allegedly used in Defendants' mesh was more dangerous than the allegedly toxic polypropylene that Defendants intended to use in the mesh. Nor does Plaintiff offer any facts to suggest that the use of allegedly "substandard, adulterated, and non-medical grade polypropylene" caused different or more severe injuries than would have occurred if the mesh were properly constructed. Plaintiff's allegations therefore do not support a claim for a "construction or composition" defect. *See Rayford*, 2016 WL 4398513, at *4-5; *cf. Rollins v. St. Jude Med.*, 583 F. Supp. 2d 790, 800-01 (W.D. La. 2008).

Plaintiff's second LPLA claim is for a "design defect." *See* Rec. Doc. 15 ¶¶ 26-32 (citing La. Rev. Stat. § 9:2800.56). To state a claim for a design defect, a plaintiff must plead that "there existed an alternative design for the product that was capable of preventing the [plaintiff's] damage" and that the benefits of adopting the alternative design outweighed the costs, both in terms of any increased burden on the manufacturer and any decreased utility of the product. *See* La. Rev. Stat. § 9:2800.56. Plaintiff alleges that Defendants' mesh was defective because (1) its pores are too small and (2) it is comprised of more than one layer of material. *See* Rec. Doc. 15 ¶¶ 14, 30. Plaintiff further alleges that these design flaws cause pain and inflammation, especially as the mesh contracts after surgery. *See id.* Finally, Plaintiff alleges that a "safer and more effective alternative design[]" would have been "a flat, uncoated, single layer, porous mesh." *Id.* ¶ 31.

However Plaintiff does not allege that the improvements represented by this alternative design "outweighed the burden on the manufacturer of adopting such alternative design." La. Rev. Stat. § 9:2800.56. Absent an allegation that implementing the alternative design would not have been overly burdensome, Plaintiff has failed to state a claim for a design defect. *See Lewis v. Baxter Int'l Inc.*, NO. 16-16391, 2017 WL 661324, at *4 (E.D. La. Feb. 17, 2017). "The Court is mindful that much of the

8

evidence in [medical device] products liability cases may be in the defendant's possession, and thus, without the benefit of discovery, stating more specific allegations may be nearly impossible at this stage, but" Plaintiff must still plead every element to state an LPLA design defect claim. *Id.* Here Plaintiff does not even mention the burden that Defendants would face in implementing the alleged alternative design.

Plaintiff's third LPLA claim is for inadequate warning. *See* Rec. Doc. 15 ¶¶ 33-42 (citing La. Rev. Stat. § 9:2800.57). "To recover for a failure to warn . . . , a plaintiff must show: (1) that the defendant failed to warn the [plaintiff's] physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Hargrove v. Boston Sci. Corp.*, No. 13-3539, 2014 WL 4794763, at *11 (E.D. La. Sept. 24, 2014). Here, Plaintiff alleges that the PerFix Mesh Instructions for Use contained various warnings about the risks of the product, but that the warnings did not fully disclose the "duration, frequency, or severity" of the risks. *See, e.g.*, Rec. Doc. 15 ¶¶ 38, 40. Plaintiff also alleges that the allegedly inadequate warning related to "pain" and "recurrence[,]" which are two of the injuries that Plaintiff allegedly suffered. *See id.* ¶¶ 7, 37, 38. Finally, Plaintiff alleges that his physician would not have used Defendants' product

9

in Plaintiff's surgery if an adequate warning had been provided. *See id.* ¶ 41. Therefore, Plaintiff has stated a claim under the LPLA that Defendants' product was unreasonably dangerous because of an inadequate warning. *See Donald v. AstraZeneca Pharm., LP*, No. 16-17753, 2017 WL 1079186, at *3 (E.D. La. Mar. 22, 2017) (reasoning that allegation that defendant failed to "properly warn[] of the risks of kidney injuries" was sufficient to state a claim); *Lewis v. Baxter Int'l Inc.*, No. 16-16391, 2017 WL 661324, at *4-5 (E.D. La. Feb. 17, 2017) (explaining that plaintiff "is not required to detail what an adequate warning would be" to state a claim).

Plaintiff's fourth LPLA claim is for breach of an "express warranty." *See* Rec. Doc. 15 ¶¶ 43-49 (citing La. Rev. Stat. § 9:2800.58). "A product is unreasonably dangerous when it does not conform to an express warranty . . . if the express warranty has induced the [plaintiff] or another person or entity to use the product and the [plaintiff]'s damage was proximately caused because the express warranty was untrue." La. Rev. Stat. § 9:2800.58. An express warranty is a "representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance." *Id.* § 9:2800.53(6). An express warranty is not a

10

"general opinion about or general praise of a product." *Id.* Moreover, representations that a product is "safe" or "effective and safe for its intended use" do not create an express warranty because such statements are nothing beyond a general opinion or praise. *See Doe v. AstraZeneca Pharm. LP*, No. 15-438, 2015 WL 4661814, at *4 (E.D. La. Aug. 5, 2015); *Corley v. Stryker Corp.*, No. 13-02571, 2014 WL 3375596, at *5 (W.D. La. May 27, 2014).

Plaintiff fails to state a claim for breach of an "express warranty" because Plaintiff (1) does not plead an express warranty with any level of particularity and (2) does not plead that an express warranty induced his use of the product. Without explaining who made the following statements or in what context the following statements were made, Plaintiff alleges that Defendants warranted the following: "that PerFix Mesh was a safe and effective treatment for hernias, reasonably fit for intended purposes, and or merchantable quality[;]" "that the risks, side effects, and complications associated with PerFix Mesh were minimal and comparable to other hernia mesh products[;]" and "that PerFix Mesh was adequately researched and tested." Rec. Doc. 15 ¶ 46. These are the types of generic expressions of opinion and praise that fail to state a claim under the LPLA. *See* La. Rev. Stat. § 9:2800.53(6) ("general opinion about or general praise of a product" is not an express warranty); *Doe*, 2015 WL 4661814, at *4 (explaining that similar statements did not state a claim under

the LPLA); *Corley*, 2014 WL 3375596, at *5 (same). Moreover, Plaintiff never alleges that these statements induced his use of the product, which is also grounds to dismiss the claim. *See Parra v. Coloplast Corp.*, No. 16-14696, 2017 WL 24794, at *4-5 (E.D. La. Jan. 3, 2017) (reasoning that failure to allege inducement supported dismissal of express warranty claim); *Corley*, 2014 WL 3375596, at *5 (same). Plaintiff only alleges that Defendants "intended" the public to rely on their express warranties; that is not an adequate allegation because the statute requires actual inducement. *See* La. Rev. Stat. § 9:2800.58.

Because Plaintiff has adequately alleged that Defendants' product was defective because of an inadequate warning, Plaintiff's redhibition claim may also be viable. Under Louisiana law, a plaintiff has a cause of action for redhibition when a product has defects that "render [] the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." La. Civ. Code art. 2520. Such a defect gives the buyer "the right to obtain rescission of the sale." *Id.*

A plaintiff may make a claim under the LPLA and in redhibition; however, redhibition is available only to the extent the plaintiff seeks to recover the value of the product or other economic loss. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 251 (5th Cir. 2002). As discussed above, Plaintiff has adequately

alleged that Defendants' mesh had some defect that rendered it useless and that he would not have used Defendants' mesh had he known of such defect. *See* Rec. Doc. 15 ¶ 55. However, Plaintiff's damages as to this claim are limited to the cost of the product and other economic damages that Plaintiff suffered. *See Guillory v. Pellerin*, No. 07-1683, 2009 WL 1010816, at *2 (W.D. La. Apr. 14, 2009) (citing *Aucoin v. S. Quality Homes, LLC*, 2007-1014, pp. 8-9 (La. 2/26/08); 984 So.2d 685, 692); *Barrette v. Dow Agrosciences, LLC*, No. 02-1677, 2002 WL 31365598, at *3-4 (E.D. La. Oct. 18, 2002).

Plaintiff's three remaining claims for negligence, breach of warranty of fitness for ordinary use, and breach of implied warranty of merchantability and fitness are precluded by the LPLA. The LPLA sets forth the "exclusive theories of liability for manufacturers for damage caused by their product." La. Rev. Stat. § 9:2800.52. "A [plaintiff] may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in th[e] [LPLA]." *Id*. Therefore, Plaintiff's remaining non-LPLA claims must be dismissed. *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248, 1250-51 (5th Cir. 1997) (affirming dismissal of claims for "negligence, fraud by misrepresentation, market share liability, breach of implied warranty of fitness and civil conspiracy" because of the LPLA's exclusivity provision); *see also, e.g.*, *Stroderd v. Yamaha*

*Motor Corp., U.S.A.*, No. 04-3040, 2005 WL 2037419, at *2-3 (E.D. La. Aug. 4, 2005) (dismissing a plaintiff's "negligent repair and breach of contract claims" because of the LPLA's exclusivity provision).

Plaintiffs argue that these three remaining claims are alternate theories of liability if Defendants are ultimately not "manufacturers" for purposes of the LPLA. *See* Rec. Doc. 18 at 8-9 (citing Fed. R. Civ. P. 8(d)). But the statements that "Defendants were negligent[,]" "PerFix Mesh is not reasonably fit for ordinary use[,]" and "PerFix Mesh is not of merchantable quality or safe and fit for intended uses" lack the basic factual allegations necessary to state viable claims. *See* Rec. Doc. 15 ¶¶ 60, 64, 68. Instead, they are the types of legal conclusions that are insufficient to survive a motion to dismiss. *See Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 622 (5th Cir. 2012).

Moreover, even if the claims did not lack factual support, Plaintiff in no way explains how these theories of liability differ from the LPLA claims. Plaintiff has not pled facts to suggest that Defendants incurred liability by taking actions in any capacity other than as a manufacturer. *Cf. C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, No. 10-4441, 2013 WL 990026, at *4-7 (E.D. La. Mar. 13, 2013) (allowing breach of contract claim to proceed because plaintiff did not allege personal injury, meaning that the LPLA's exclusivity provision did not apply); *Mcauslin v. Grinnell*

14

*Corp.*, No. 97-775, 2000 WL 1655242, at *6 (E.D. La. Nov. 3, 2000) (explaining that the LPLA does not preclude claims for "contractual obligations"); *Lavergne v. Am.'s Pizza Co.*, 2002-889, pp.3-4 (La. App. 3 Cir. 2/5/03); 838 So. 2d 845, 847-48 (allowing some non-LPLA claims to proceed when defendant "w[ore] two hats; one as the supposed manufacturer of the sauce, and another as an employer of a potentially negligent employer).

Plaintiff's claims for negligence, breach of warranty of fitness for ordinary use, and breach of implied warranty of merchantability and fitness all target Defendants' actions as the companies that designed, manufactured, and distributed the allegedly harmful mesh. *See* Rec. Doc. 15 ¶¶ 57-68. All three claims seek relief because the mesh allegedly "damaged Plaintiff." *See id.* ¶¶ 60, 64, 68. Plaintiff has not pled facts indicating that these claims are distinct from the LPLA claims and the claims are therefore precluded by the LPLA.

Finally, Plaintiff states in his Amended Complaint that he seeks attorney's fees. *See* Rec. Doc. 15 at 16. The remedies under the LPLA and redhibition diverge in that the LPLA does not allow recovery of attorney's fees, but redhibition does. *See* La. Rev. Stat. § 9:2800.53(5) (LPLA); La. Civ. Code art. 2545 (redhibition). However, for a claim in redhibition, attorney's fees may be awarded only "for the pure economic loss and not for the damages recovered pursuant to the LPLA." *See De Atley v.*

*Victoria's Secret Catalogue, LLC*, 2004-0661, p.4 (La. App. 4 Cir. 5/14/04); 876 So. 2d 112, 115.

New Orleans, Louisiana, this 17th day of April, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE